## WHITE et ux. v. EAGLESON.
### No. 12592.

United States Court of Appeals
Ninth Circuit.

Dec. 29, 1951.

Davis & Renfrew and Edward V. Davis, all of Anchorage, Alaska, for appellants.

Kay & Robison and Wendell P. Kay, Anchorage, Alaska (Roger Cremo, Anchorage, Alaska, of counsel), for appellee.

Before MATHEWS and STEPHENS, Circuit Judges, and McCORMICK, District Judge.

PAUL J. McCORMICK, District Judge.

This is an appeal from the final judgment, after a verdict of the jury rendered in the District Court for the Territory of Alaska, Third Division. Judgment was for $3500 plus interest, costs and attorney's fees in favor of the plaintiff, Clara M. Eagleson, appellee herein, and against defendants Lawrence A. White and Erma R. White, appellants herein.

Under date of July 7, 1948, by a written instrument captioned "Authorization to Sell" the appellants, husband and wife, owners and partners in a going "combined candy-making and retail and restaurant business," known as L. W. Chocolate Shop, at Anchorage, Alaska, had given to appellee, a licensed real estate broker, the exclusive sale or transfer of such business for the agreed price of $45,000. The writing was unilateral in that it was signed only by the appellants.

The form that was used in obtaining the agency appointment was prepared entirely by Carl T. Rentschler, one of the staff of the appellee broker under her direction. It erroneously describes the property involved as "real estate." It also contains contradictory and confusing terms relative to the status and powers of the agent appointed therein. It states in one place that "in consideration of the services of said agent in making such sale, transfer, sending me a buyer, advertising or being instrumental in any manner whatever in selling or transferring said property" the sellers agreed to pay their agent a commission due on total sale price of 10%. The instrument provides that any agreed change in the price or terms, or in case of a sale made by the owner while the agency agreement was in effect, shall work no forfeiture in the commission due the agent in a sale or transfer of the property.

Another paragraph near the end of the agency appointment in suit reads: "I hereby list said property exclusively with said agent for a period of sixty days. I agree to pay said agent the commission set forth in this agreement, if a sale is made within sixty days after the termination of this authorization to sell, to parties with whom said agent negotiated during the time of the authorization to sell."

While the "authorization to sell" according to its specified duration terminated several months before the sale in question in this appeal was made, the authority conferred on the appellee by the instrument of July 7, 1948 was effectively extended to and including April 30, 1949.

As the result of contracts and dealings solely and directly between appellants and one Herbert E. Pickering, the L. W. Chocolate Shop was sold to Pickering by the appellants for $35,000 under a written agreement of sale dated May 1, 1949, and signed on that day by the respective parties to the sale.

Upon the failure of the sellers to pay to Mrs. Eagleson a commission on their sale to Pickering, she commenced the action in the court below, demanding 10% of the sale price of $35,000 as commission due her under the instrument of July 7, 1948, on her claim laid in the complaint that she "was instrumental in obtaining one John Doe Pickering to purchase said property."

Epitomizing the situation disclosed by the record, and in the light of the jury's general verdict, the crucial legal question in this appeal is whether the appellee was in any manner whatever instrumental in selling the L. W. Chocolate Shop. We think such is the problem before us, whether we view the agency agreement as conferring upon Mrs. Eagleson the exclusive right to sell or transfer the business, or consider it to be in some other contractual classification. Being of an ambiguous character and having been drawn by the appellee, the doubtful meaning of the written instrument in suit requires that it be construed against the broker.

Nothing that the appellee did or refrained from doing operated in any way upon Pickering to purchase. This is clearly shown by the record and seems to have been specifically disclosed by the irrefuted testimony of Pickering in the court below. And while the contract sued on does purport to invest Mrs. Eagleson with the commission right for "advertising" the property for sale, such services under the record do not warrant the allowance of the commission of $3500 as compensation because, as the trial judge correctly observed in ruling upon the relevancy of certain testimony concerning the agent's advertising of the property, "But you are not suing for services, you are suing for the commission."

Moreover, there is nothing in the record before us that shows or that warrants an inference that the buyer Pickering ever saw or considered any advertisement by appellee concerning the property. The only item in the evidence that in any way indicates "instrumentality" by appellee in selling the business to Pickering is the testimony of Rentschler that he, as the result of an understanding with White about April 8, 1949, brought persons into the Chocolate Shop to make it appear deceitful to Pickering that such persons were prospects, and it is clear from the record that this clandestine arrangement between White and Rentschler had

no effect whatever upon Pickering's attitude in buying the property from the appellants.

Other claimed errors in the court below are argued in the briefs, but in view of our conclusion of an absence of any legal liability of appellants to the appellee under the "Authorization to Sell," we do not consider it necessary to discuss or consider them in this opinion.

The judgment dated and entered February 27, 1950, is reversed with directions to dismiss the action in the court below without costs to any party.